IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

MARY L. RADATZ,

        Plaintiff,

v.                                      CIVIL ACTION NO. 2:13-cv-17989

C. R. BARD, INC.,

        Defendant.

**MEMORANDUM OPINION AND ORDER**
(Defendant's Motion for Summary Judgment)

Pending before the court is the Motion for Summary Judgment ("Motion") [ECF No. 16], filed by defendant C. R. Bard, Inc. ("Bard"). The plaintiff has responded to the Motion [ECF No. 21], and Bard has replied [ECF No. 22]. Thus, the Motion is ripe for adjudication. As set forth below, the Motion is **GRANTED**.

I.    **Background**

This action involves a Michigan plaintiff who was implanted with the Avaulta Plus Anterior Biosynthetic Support System, a mesh product manufactured by Bard, on September 9, 2008 in Royal Oak, Michigan. Short Form Compl. [ECF No. 1] ¶¶ 1–12. This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation ("MDL") concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 24,000 cases currently pending, approximately 3000 of which are in the C. R. Bard, Inc. MDL, MDL No. 2187.

In an effort to manage the massive Bard MDL efficiently and effectively, the court decided to conduct pretrial discovery and motions practice on an individualized basis. To this end, I ordered the plaintiffs and defendants to submit a joint list of remaining cases in the Bard MDL, MDL 2187, with claims against Bard and other defendants where counsel has at least 20 cases in the Bard MDL. The list included nearly 3,000 cases. From these cases, I selected 333 cases to become part of a "wave" of cases to be prepared for trial and, if necessary, remanded. *See* Pretrial Order No. 236, *In re C. R. Bard, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:10-md-02187, Jan. 27, 2017, https://www.wvsd.uscourts.gov/MDL/2187/orders.html. Upon the creation of a wave, a docket control order subjects each active case in the wave to the same scheduling deadlines, rules regarding motion practice, and limitations on discovery. I selected the instant civil action as a Wave 4 case.

## II. Legal Standards

### A. Summary Judgment

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To discharge this burden, the moving party may produce an affidavit to demonstrate the absence of a genuine issue of material fact. *See id.* The moving party, however, is not required to do so and may discharge this burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325; *see also Pumphrey v. C.R. Bard, Inc.*, 906 F. Supp. 334, 336 (N.D. W. Va. 1995). If the moving party sufficiently points out to the court those portions of the record that show that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to come forward with record evidence establishing a genuine issue of material fact. *Pollard v. United States*, 166 F. App'x 674, 678 (4th Cir. 2006) (citing *Celotex, Corp.*, 477 U.S. at 325).

Should the burden shift, the nonmoving party must offer some "concrete evidence from which a reasonable juror could return a verdict" in his or her favor. *Anderson*, 477 U.S. at 256. The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Id.* at 252. Likewise, conclusory allegations or unsupported speculations, without more, are insufficient to preclude the granting of a summary judgment motion. *See Dash v.*

*Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997). Summary judgment is therefore appropriate when, after adequate time for discovery, the moving party first discharges the initial burden and then the nonmoving party does not make a showing sufficient to establish a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 322–23.

### B. Choice of Law

The parties agree that Michigan choice-of-law principles apply to this case and that these principles compel the application of Michigan substantive law to the plaintiff's claims.

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases. The choice of law for these pretrial motions depends on whether they concern federal or state law:

> When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation.

*In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (citations omitted). If a plaintiff files her claim directly into the MDL in the Southern District of West Virginia, as the plaintiff did in this case, the court consults the choice-of-law rules of the state where the plaintiff was implanted with the product. *See Sanchez v. Bos. Sci. Corp.*, 2:12-cv-05762, 2014 WL 202787, at *4 (S.D. W. Va. Jan. 17, 2014) ("For cases that originate elsewhere and are directly filed into the MDL, the court will follow the better-reasoned authority that applies

4

the choice-of-law rules of the originating jurisdiction, which in our case is the state in which the plaintiff was implanted with the product."). In this case, the implantation surgery took place in Michigan. Thus, Michigan's choice-of-law principles guide the court's choice-of-law analysis.

Michigan's choice-of-law analysis begins with the presumption that Michigan law applies "unless a 'rational reason' to do otherwise exists." *Sutherland v. Kennington Truck Serv., Ltd.*, 562 N.W.2d 466, 471 (Mich. 1997).

> In determining whether a rational reason to displace Michigan law exists, we undertake a two-step analysis. First, we must determine if any foreign state has an interest in having its law applied. If no state has such an interest, the presumption that Michigan law will apply cannot be overcome. If a foreign state does have an interest in having its law applied, we must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests.

*Id.*

Here, the plaintiff resides in Michigan, she was implanted with the product at issue in Michigan, and her alleged injuries and follow-up care occurred in Michigan. Accordingly, I **FIND** that no other state has an interest in having its law applied, and I apply Michigan's substantive law to this case.

### III. Analysis

Bard argues it is entitled to summary judgment on all of the plaintiff's claims because they are barred by the relevant statutes of limitations and because the plaintiff is unable to establish causation, which is an essential element to all of her claims. Bard also argues it is entitled to summary judgment on the plaintiff's strict

5

liability and punitive damages claims because they are not recognized under Michigan law.

### A. Conceded Claims

The plaintiff concedes the following claims: Count II (Strict Liability – Design Defect); Count III (Strict Liability - Manufacturing Defect); Count IV (Strict Liability – Failure to Warn); and Count V (Breach of Express Warranty). Accordingly, Bard's Motion regarding these counts is **GRANTED**.

### B. Causation

Bard contends that it is entitled to summary judgment on the plaintiff's claims for negligence and breach of implied warranties because the plaintiff is unable to establish that any act by Bard caused her alleged injuries. Bard notes that the plaintiff has only disclosed one specific causation expert to testify in this case, Dr. William Porter, and he testified during his deposition that he could not offer an opinion to a reasonable degree of medical certainty that the Avaulta mesh product caused the plaintiff's alleged injuries. In response, the plaintiff points to reports by Dr. Porter and Dr. Bruce Rosenzweig, a general causation expert, explaining how polypropylene mesh products causes injuries *generally*.

Products liability actions sounding in negligence and breach of implied warranty require the plaintiff to establish "a causal connection between an established defect and injury." *Skinner v. Square D Co.*, 516 N.W.2d 475, 478 (Mich. 1994). "[A]s part of its prima facie case, a plaintiff must show that the manufacturer's negligence was the *proximate cause* of the plaintiff's injuries." *Id.* at 479. This "entails

6

proof of two separate elements: (1) cause in fact, and (2) legal cause, also known as 'proximate cause.'" *Id.* "The cause in fact element generally requires showing that 'but for' the defendant's actions, the plaintiff's injury would not have occurred." *Id.* "[T]he plaintiff is not required to produce evidence that positively eliminates every other potential cause[,]" *id.* at 478, but "must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result." *Id.* at 481 (quoting *Mulholland v. DEC Int'l Corp.*, 443 N.W.2d 340, 350 n.18 (Mich. 1989)).

In this case, Dr. Porter concluded in his expert report that "it is my opinion to a reasonable degree of medical probability that the cause of Ms. Radatz's pelvic pain, pelvic pain [sic] is increased by her Avaulta Mesh implant due to the chronic inflammation associated with polypropylene mesh." Pl.'s Mem. Opp'n to Bard's Mot. Summ. J., Ex. 4, at 5 ("Porter Expert Report") [ECF No. 21-4]. His report also states that "[i]n considering the cause of the vaginal pain and dyspareunia suffered by Mary Radatz, her Avaulta Plus Mesh contributed to her vaginal and pelvic pain." *Id.* at 4. In addition, Dr. Porter's report states that he considered other potential causes of the plaintiff's pain and "concluded that they could be ruled out as a source of her vaginal pain and painful intercourse suffered by Mary Radatz." *Id.* at 5.

During his deposition, Dr. Porter reversed course. There, he stated that he could not opine to a reasonable degree of medical certainty that the plaintiff experienced any pain attributable to the Avaulta mesh product.

> Q. But, clearly, there's not enough for you to offer an opinion to a reasonable degree of medical certainty or

7

> medical probability in this case that this patient has actually suffered vaginal pain or pain with intercourse that you attribute to her Avaulta Plus, correct?
>
> A. That's correct.

Def.'s Mem. Supp. Mot. Summ. J., Ex. D, at 699:7–14 (objection omitted) ("Porter Dep.") [ECF No. 17-4]. Dr. Porter also stated that he could not rule out the plaintiff's prior vaginal surgeries as potential sources of her pain.

> Q. –where it says that you've ruled out other sources of her vaginal pain and painful intercourse, that's wrong; you have not ruled them out?
>
> A. I cannot rule them out.

*Id.* at 700:13–18 (objection omitted). Dr. Porter then confirmed that he would not be able to offer an opinion regarding causation in this case.

> Q. Okay. So you're not actually offering a causation opinion in this case about any complication to a reasonable degree of medical certainty or medical probability, correct?
>
> A. At this time, I—I cannot.

*Id.* at 700:20–24.

> Q. And so you're not offering any opinions critical of the Avaulta Plus or Bard, or anything in this case that would attribute any injuries to anything about Bard's product or Bard's conduct, correct?
>
> A. I am not.

*Id.* at 701:10–16 (objection omitted).

> Q. So sitting here today, having done a report almost two months ago and being prepared to give your deposition in the—the Radatz case, basically you—you can't support any claim she might be making in the case, correct?
>
> A. Not sitting here today, no.

8

*Id.* at 701:23–702:3. When asked if he planned to withdraw his report, Dr. Porter answered, "I will probably withdraw—I probably would have to examine the patient to move forward with it." *Id.* at 701:20–22. To date, Dr. Porter has not withdrawn his report nor examined the plaintiff.

Although Dr. Porter has not officially withdrawn his report, he made perfectly clear during his deposition that he no longer intends to offer the conclusions contained therein. The plaintiff, in her response to Bard's Motion for Summary Judgment, does not dispute this. Instead, she argues that has established causation by offering evidence of how polypropylene mesh products cause injuries generally. Thus, I find that there is no genuine issue of material fact that Dr. Porter is unable to opine that Bard's product caused the plaintiff's alleged injuries.

Dr. Porter is the only specific causation expert offered by the plaintiff in this case. Since he is unable and unwilling to opine that the Avaulta mesh product caused the plaintiff's alleged injuries, the plaintiff is unable to establish "a causal connection between an established defect and injury." *Skinner*, 516 N.W.2d at 478. While the general causation experts may be able to establish that a defect in the Avaulta mesh has the potential cause injury, the plaintiff still must produce evidence linking the mesh to *her particular* injuries. Without such evidence, there is no "reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result." *Id.* at 481. As such, I **FIND** that the plaintiff has failed to present a prima facie case, because she has not presented evidence to "show

9

that the manufacturer's negligence was the *proximate cause* of the plaintiff's injuries." *Id.* at 479.

I **FIND** that there is no genuine issue of disputed fact on the element of causation, and Bard is entitled to judgment as a matter of law on Count I (Negligence) and Count VI (Breach of Implied Warranty). Accordingly, Bard's Motion regarding these counts is **GRANTED**.

### C. Punitive Damages

Because summary judgment has been granted on all substantive theories of liability, the plaintiff's punitive damages claim must also be dismissed, because it is not an independent cause of action. *See Blackwell v. Ethicon, Inc.*, No. 2:12-cv-03155, 2017 WL 2884531, at *3 (S.D. W. Va. July 6, 2017). Accordingly, Bard's Motion as to Count XIII (Punitive Damages) is **GRANTED**.

### IV. Conclusion

For the reasons discussed above, it is **ORDERED** that Bard's Motion for Summary Judgment [ECF No. 16] is **GRANTED** and the plaintiff's claims against Bard are **DISMISSED with prejudice**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: February 1, 2018

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE